Now we come to Singh v. Mukasi, number three. Good morning, Your Honor. Good morning. In the first place, I'd like to indicate for the Court, and there's been no opportunity to tell, to give a written submission, and Mr. Singh, who's now 64 years old, he has divorced his wife, who was left in India, and he's actually married to a U.S. citizen. He did that two months ago, and we asked him to come in to file an I-130, and he mailed me and I received on Friday an I-130 that was prepared by somebody else. So he has filed an I-130 with the service, and he would be eligible to apply for perhaps a joint stipulation motion to reopen with the ICE attorneys. He did enter the country with a visa, so he would be eligible to adjust status. Just that these things have occurred just very recently, and so we've not been able to present that motion to ICE. We did informally discuss it with the oil attorneys. An associate in my office did call. With the what attorneys? Office of Immigration Litigation, if they would. Oil, oil. Right. So we've got ICE and oil here. We've got ICE and oil, right. They don't mix very well either. So that is the current situation of Mr. Singh. I'm ready, however, to address the question in this case and the denial of his part in the asylum application by the immigration judge and the Board of Immigration Appeals. Basically, the question revolves around the detention suffered by Mr. Singh in the year 2003. Before you begin, have you talked to any, either one of these particular ICE and oil and tried to suggest if this case was moot as a result of that? As I, my associate did speak with oil and asked. Did they suggest that it might be moot then as a result of that, this case? No, they did not. So we're really back involved with this case with a determination to make based on the facts here, correct? That is correct, Your Honor. Even though you've given us this other information, it really has no relevance to what we have here. Correct, but I know that the court would like to know all the facts as they exist. I understand that, and I'm glad that you gave them to us. And with respect to the, I mean, in order for Mr. Singh to be able to adjust that as the case would have to be reopened or if there were, for any other reason, a remand from this court, then he would be able to present that application for release. Well, you've got issues with the bona fides of the marriage and all that. Well, Your Honor, unfortunately, I'm not the one who presented the application. I'm not the one who prepared the I-130, but I myself am aware. I've been discussing his relationship with the American, with the person who's now his wife. He's been involved with her, I think, for about two years. She's a disabled woman, and, you know, he's explained to me how the relationship came about. And I have no doubt about the bona fides, but he went and did the I-130 with somebody else, so we're going to have to fix it up. At any rate, the question is, so Mr. Singh today is 64 years old at age 59. He's arrested by the Indian police in his home in Bangalore, and he's severely mistreated. He's taken to an unidentified place. It's not even a police station or a place where there might be other people around who might, you know, require any accountability. So here he is, a man 59 years old, a Sikh, who has experienced, if not on his own skin, has certainly witnessed what has happened to Sikh people. He was there for the 1984 killings and burnings. He saw the manager of his place of employment had his house looted. He personally observed other Sikhs having tires burned around their neck. He himself was harassed as a student and a child. The record doesn't- What's the standard of review here for this case? Whether a reasonable fact finder is compelled to find that what he suffered was persecution or that- And what am I looking for to sustain the IJ's decision? Substantial evidence, am I not? Correct. And so the judge, the IJ, says one single incident doesn't amount to persecution. He lived unharmed in India for 60 years. He had no injuries and no medical attention. And for that reason, he's suggesting that he can't really find that there's past persecution. Then he says the incident that- Even the instance suggested did not occur on account of a protected ground because no one ever said it had to do with the Sikhs. And so I guess I'm looking at all this evidence that we have and all- I mean, I can't make that decision myself. I have to give substantial evidence that's in the record. And therefore, I'm having a tough time under a substantial evidence standard to suggest that one could establish past persecution here. Well, if I may, Your Honor, the Board of Immigration Appeals is a decision that we're reviewing also. I understand. And they did sustain our appeal as to the on account of it. They say that there was evidence in the record to substantiate that the motive for the arrest was because he was a Sikh. He was accused of supporting the Palestine movement. I'm glad that you got there because the BIA then looks at the IJ's record. And the BIA gives it great consideration and tries to decide. And they say, even given that I'm going to change some of the things that are in this record, there's still no past persecution. One problem is not enough, especially since it wasn't severe. The 1984 riot, his family and home weren't hurt. No individual action against him. And so, again, they come out with the same- and I'm supposed to find this on substantial evidence. Correct, Your Honor. Well, I think you need to look at it in context. I am. All right. Substantial evidence isn't a lot of evidence. I mean, he's a very fortunate person that he's a Sikh who lived in India for 59 years before encountering the severe problem that he did encounter. And that is brought up continuously in the government's briefs and also by the judge in the BIA. How much evidence is substantial evidence, Counselor? How much evidence is substantial evidence? Well, if we weigh, Your Honor, if we weigh the evidence of the- It doesn't have to be very much, does it? It does- Just evidence that would sustain the decision of the decision-maker. In other words, competent evidence in the record that would sustain that decision. That's all we've got to find. That is correct, Your Honor. But at the same time, the immigration judge and the board have to consider all of the evidence that was presented. And that was not all the evidence that was presented. The evidence that was presented spoke of a man who was arrested under those particular circumstances. There's case law where arrests that have been smaller, threats that have incurred less physical harm have been found to be persecution. That's first of all. Second of all- Have you read Brassad v. the INS? And I admit I'm from INS, so I probably don't say it correctly.  There was a four- to six-hour detention on a single occasion. The police hit, kicked, and interrogated the prisoner. But that didn't make past persecution. Your Honor, I- Then Gu v. Gonzalez. We had another one where there was an alleged detention and beating on a single occasion, but the injuries didn't require medical treatment. That didn't compel a reversal. Then we had Monsoor, where there were allegations of discrimination, where the prisoner or where the petitioner was struck on account of religion and treated badly by his teachers, and still that wasn't enough to compel a change in substantial evidence. Aren't these cases, then, precedent that I have to live with? There's precedent to the contrary as well, Your Honor, and we cited it in our brief. Precedent to the contrary is again on substantial evidence. It is on substantial evidence. And it's on sustaining the IJ's determination about the substantial evidence. Your Honor, I disagree with, respectfully disagree with the interpretation. I think that, first of all- You ought to start out and say, first of all, I know that Judge Preggerson dissented in Brassad. Exactly. And I believe in Gould, so in both of them, Your Honor. That's exactly true. In both of them. Both of them. That's the best. If you can convince your colleagues, then maybe my client would be in good luck. I think my time is just about running out. What's the basis for your position or your statement, I should say, that you talked about one incident not being enough? Your Honor, there's one incident. I believe, Your Honor, that the treatment of my client was severe. I mean, I consider it to be quite severe to be detained from your home, to be taken to an unknown location, to be held there, and to be threatened, to be told, for them to try to have you sign a false confession. I think that concept comes from this Gould v. Ashcroft case. But as I recall, there the court found that there were two separate detentions, but I believe the court found that each was enough to compel a finding of persecution during each of those separate detentions. As you started out talking about one occasion. Your Honor, well, we have one arrest, one detention. I think that was not the only harm that he suffered, but also he's threatened that if he goes to the authorities about that detention, that if he seeks any medical care, I mean, he did self-medicate at home, but if he goes anywhere, bad things will follow. He leaves the country within three months of this incident. I think that he probably, I mean, he has also a fear of future persecution. He's already now been singled out. But the country reports don't help you there. Well, I respectfully disagree, Your Honor. The country reports say that there was a long historical militancy period in Punjab, which ended in the mid-'90s, but that torture and arrest continues, the torture in particular in cases of unlawful arrest continues. That sounds good, but even your client admits there's a safe place. He says he maybe could go to the Punjab. He doesn't say he could go to the Punjab. And he's been persecuted by the government. He's not required to show that he cannot relocate any other place. He leaves immediately after he's been singled out and mistreated. If he sticks around, he may well be, he only has to show a 10 percent probability that this could happen to him again. He didn't stick around to find out if it would. He states in his asylum application that they have gone to his home inquiring about his whereabouts. They've asked his wife of his whereabouts as he'd come back. So he believes that they still have an interest in him. The reports in the Amnesty International, I mean, the BIA and the IJ just focus on very tiny aspects of the reports. I mean, you have the difference in Prasad. You have a government of Fiji. You have the population of Indian ethnics and Fiji ethnics is about 50-50. And when the Fiji ethnics came to power, there was actions taken against Indian and that's, you know, the background under which Prasad occurs. Here with respect to Mr. Singh, I mean, the amount of human rights violations that have been perpetrated upon the Sikhs in India are voluminous. The reports that we submitted address those facts. The killings that occurred in 1984, the reports that the government of India has now sought 20 years, what is it, 25 years extension on completing their human rights report and addressing the torture, addressing the impunity of the armed forces. And so the country has not really come to terms with its past or, you know, indicated that it's going to change the situation for the, sufficiently for it to show that there's really a commitment to change the situation for Sikh people. I mean, the number of Sikh asylum cases, you know, just in the circuit and generally, you know, has been huge because of the size of the problem for Sikhs in India. If we grant the relief that you request, what happens? I think you would have to remand for the board or the IJ to exercise discretion as to whether or not to grant asylum. All right. Thank you. Morning, Your Honors. My name is David Shore. I represent the Attorney General in this matter. In this asylum case, the petitioner had a full and fair opportunity to present his claims before an asylum officer, an immigration judge, and for the board. At every level, he was found ineligible for asylum. The board determined that he neither demonstrated that he established past persecution, nor that he possessed a well-founded fear of future persecution, and substantial evidence supports those determinations. One incident is enough. One incident can be enough to establish past persecution. Your Honor, in this case, the board... I just asked you a question. Is that true or untrue? Is that a correct statement, that one incident, a severe incident, can be enough to establish past persecution? Your Honor, I suppose under different, more extreme facts, that could be possible. The board didn't make... You can answer that question. That may be possible, Your Honor, but those aren't the facts here. I'm not thinking about the facts here. I'm just talking, speaking generally. Put your mind up there, okay? Now, one incident, the facts of one incident, can be severe enough to sustain a finding of past persecution. That may be true, Your Honor. The board would have to say that in the first instance, and I hesitate to bind the board in making a future determination, but that may be true, Your Honor, but here, the single... In the facts here, one incident was insufficient. We're just speaking generally. You have to have two incidents. You have to have three incidents. Your Honor, the board has to make these determinations in the first instance, and I... You have no thoughts on this subject. Your Honor, my thoughts are irrelevant to the... to whether the board's decision is supported by substantial evidence, which it is. But I'm asking you a question. You're supposed to be an expert in this area, aren't you? I wouldn't call myself an expert, Your Honor, but... Okay, but so what part of the Department of Justice you work for? I work for oil, Your Honor. For oil. Okay. Tell me what that stands for again. Office of Immigration and Litigation. Office for Immigration and Litigation. Okay, that makes you an expert, right? No. I think you're telling me that you don't know whether one incident is sufficient or not, whether it takes two incidents to the minimum. Your Honor, I mean, I suppose one could come up with a hypothetical situation where one severe incident, you know, could potentially be enough. Why are you afraid of answering my question? Your Honor, I believe I have answered your question. I believe that it is possible that one incident could demonstrate persecution, but the incident here doesn't rise to that level. I don't care about the incident here. I'm just speaking generally. I mean, in Goo, there were two incidents, weren't there? Well, no, Your Honor. In Goo, there was a three-day detention, and the individual was struck three times with a rod, and he was forced to sign a letter admitting that he had done wrong. In Guo, which Goo distinguished, there were two separate periods of detention. And in the first detention, which the court in Guo found to constitute persecution, that was, I believe, a one-and-a-half-day period of detention. He was punched and kicked, forced to do push-ups, and forced to renounce his beliefs. In Goo, the court distinguished Guo, noting the repeated lengthy harassment by the police, and that was absent from Goo. It was absent from Frasad, and it's absent from the case here, where the petitioner alleged an isolated incident in which police allegedly came to his home and took him to a location and hit him using only their hands. And then they released him. He walked two miles, he said, immediately after this incident, and did not seek or require medical attention. Under this Court's precedent, that does not rise to the level of the extreme treatment that is persecution, although it's undoubtedly unfortunate it doesn't rise to the level of persecution. And similarly, the other incidents where he alleged discrimination in the past, the only episodes of discrimination he identified were being called names by classmates and that his teachers wouldn't answer his questions. And this, too, is, of course, unfortunate, but as this Court has stated, that treatment doesn't constitute persecution. And with regard to the 1984 unrest, during the period of militancy, the petitioner and his family weren't targeted and they weren't harmed. And that does not certainly constitute persecution directed at the petitioner. So without past persecution, what we're left is with an undifferentiated claim, which this Court has rejected, of a fear of future persecution, which, however, is not supported by the current conditions. As counsel noted, in the past, during the period of militancy in the Punjab, from 1984 to the mid-'90s, according to the country reports, as the Board noted, that was the period of violence referred to. Now there are commissions set up to account for the violent acts that occurred in the past. And also the current Prime Minister of India is a Sikh individual. And based on petitioner's allegations, the Board and the immigration judge found the petitioner described a local threat that he had faced in Bangalore. Now I would like to also note that according to the country reports and the reports that both DHS and petitioners submitted, the Indian government is a federal system. And the local police in Bangalore would – and also their same reports indicate that police are local employees rather than national employees. And it's also telling, Your Honors, that the petitioner suggested, when he was asked whether he could think of a place where he would be safe, he suggested Punjab, which was the former place of violence. The former site of the prior crackdown against Sikhs, which occurred in the 80s and 90s. And it's telling because it – as the reports indicate, the violence has subsided. And the reports also indicate the current violence in Punjab, where petitioner – I don't know how, but the reports indicate that violence that occurs now in Punjab is not directed at Sikhs. It's directed at any violence. It's just an abuse of power by police. And additionally, the treatment that he experienced in that one isolated incident, which was unfortunate, that treatment doesn't rise to the level of torture. We get back to the one incident thing again. So isn't the record saying basically the IJ and the appeals agreed that this guy was credible, that he's probably telling the truth about what happened, but essentially it's not enough? Is that where we are? Yes, Your Honor. And additionally, I – He should have stayed around and got beat up one more time or two more times? Your Honor, the Immigration Judicial Board found that he had alleged a local threat, which he could have escaped. He could have escaped by moving someplace else. Yeah, well, I mean, and his reason – Which he says he couldn't afford to do. Well, his reason for not relocating – but yet he moved across, you know, the world to the United States. His reason for not relocating was the expense of the education of his daughters in Bangalore, which, you know, his moving hasn't – he didn't allege that it impacted. And the Board found that his reasons for not relocating were incompatible with the fact that here he's already relocated to the United States. And I would like just to address very briefly the merits that the Petitioners entered into allegedly. That issue is not before this Court, and it doesn't bear on the validity of the agency decisions here. But I would like to note that the marriage is presumptively invalid because it occurred after the Petitioner was ordered removed. And the place the Petitioner would have to go with this new evidence is to the Board, because this Court must decide the case based on the administrative record under the INA. What you're saying is we can do whatever we want to with this case, but he has to go back to the Board to go through the whole process again about whether the marriage is good or not? Well, if he's before the Board, he can present it at that time in a motion to reopen, or when the Board has jurisdiction over the case, or he could just go now to the Board. But again, the issues presented here are, you know, that has no bearing on the issues that are presented here. Unless there are any questions. Remember that another member of Gu's congregation, you know, when they came in and arrested him that first time? Huh? Another member of the congregation that was arrested with him died of a heart attack three or four days after she was released. I don't recall that. Well, that's an opinion. And unless there are any others. You know where it says in Gu's statement that one incident, the persecution is not enough? In Gu, they found that the three-day period of detention and being hit ten times with a rod and being forced to sign a statement that he had done wrong did not rise to the level of persecution. In addition, in Gu, there was an allegation similar to the one that counsel has brought up. I'm talking about G-U-O. Oh, in Guo. I'm sorry, Your Honor. Not G-O. Well, G-U or G-U-O. G-U or G-U-O. Okay. I'll correct it. In Guo, Your Honor, in Gu, when the court distinguished Guo, it noted that the distinction between Prasad on the one hand, and I think the way to conceptualize it is that we have Prasad on one hand, an isolated incident of minor injuries, and then you've got Gu, G-U-O, on the other hand, where you've got repeated arrests and you've got repeated beatings and repeated harassment by the police. And I think the way the court in Gu conceptualized it was essentially a spectrum. And here in this case, where we just have the single incident, this case is governed by Gu and Prasad, whereas one isolated incident and injuries that do not require medical attention. All right. Thank you. Thank you, Your Honor. I think your time is up. Yeah. All right. Thank you very much. And we'll go on to the next case.
judges: Pregerson, Smith, Collins